1967. Daniel Nutter. Hi, good morning, your honors. I'm Daniel Nutter. I represent the defendant appellant, Ms. Ariel Machia. Ms. Machia's sentencing in this case represents a failure of justice at every level. First, as even the government concedes, her attorney's failure to recognize that the guidelines range the district court considered was 98 to 150 months higher than the correctly calculated range was objectively unreasonable. Indeed, it was reckless, it was inexplicable, and it inherently undermines confidence in the outcome of the proceeding, which is what Strickland's second prong requires us to consider, and as explained by this court's presidential opinions in Fernandez and Dorvey, among others. Further, in light of Ms. Machia's extensive mental health issues, her lifelong history as the victim of sexual abuse, including by her co-defendants, the need for a psychosocial report to inform the district court's section 3553A analysis was both obvious and compelling, and the failure of Ms. Machia's attorney even to apply for the appointment of a mitigation expert in these circumstances is simply indefensible as a matter of professional representation, especially in the massive stakes involved in this case, with Ms. Machia facing and in fact being sentenced to 30 years. Notwithstanding these unprofessional acts by her attorney, the 360-month statutory maximum sentence imposed by the district court is also unreasonable, as again the Dorvey case makes clear. The sentence has no rational justification in the record, and it ignores the clear and there's no distribution of the images. In particular, no harm suffered by the young victim who has developed normally and healthfully over the several intervening years since the pictures were produced. Again, I'm sorry. Let me just ask you a question about the psychosocial report. Am I right that there is no explanation from defense counsel as to why that report was not procured or why there was no, I guess, attempt even to get the report from the mitigation expert? Is that right? There's nothing in the appellate record. I could proffer, Your Honor, that I spoke with the defense counsel after I was appointed to the case who told me that he, again, this may be an issue if there has to be another hearing and I have to be a witness in this case. But he told me that it never crossed his mind. It was not a tactical decision. But again, that's not a part of the record. And of course, the government is entitled to speculate as to potential reasons why he might not have done so. But I mean, I happen to know and would be a witness in this case that he did not have any reason. And again, in light of the extensive record, including the government itself at the bail hearing, arguing extensively for why Ms. Macchia's mental health issues, her long history of suicidal ideation, among other things, including her attempts to hang herself as reported by her mother, provided the reason why she had to be detained during trial. So there's no question. This is not merely like self-reported, you know, 11th hour suggestions that Ms. Macchia had severe mental health issues affecting her entire sense of agency. And of course, affecting all kinds of important 3553A factors. I'm sorry, Mr. Nutter. This is I'm sorry. Okay, can I just ask you, um, I mean, I think you make some interesting points about the mitigation evidence. But isn't it under Massaro, the preferred procedural course for this court not to address a fully developed, a non-fully developed, ineffective assistance argument without prejudice to being raised on a subsequent 2255 proceeding? Well, then the district court can, you know, take, can hear evidence, it can get affidavits, it could even have live testimony, right? I would say, Your Honor, that with Massaro's stance, you're correct that Ms. Macchia has the absolute right to raise the issue in a 2255 without prejudice, and Massaro holds that. But the animating concern in Massaro was efficiency, that it was essentially usually inefficient, you know, for the claims to be raised on the first time on appeal. But subsequent opinions, such as the Leono case, which I cite in the brief, suggest some situations where it is in fact more efficient to have the issue presented in that case. And I would suggest this is one of those cases, particularly in light of, of the, of the issues regarding the guidelines calculation. Because if this court were already to remand for resentencing on that matter, which of course, I believe the court should, then at resentencing, Ms. Macchia would have a new opportunity to, at this point, get the mitigation. So, so if I understand your argument, you're saying if we agree with your other arguments, or at least one of your other arguments, such that we were to remand to the district court for resentencing, then of course, the district court could in the first instance, develop the factual record on your, on your, your particular ineffective assistance claim based on the lack of mitigation expert, right? No, even more than that, I'm saying it would become completely moot. There wouldn't even be an ineffective assistance claim that would have to be adjudicated on that point, because they could just get the mitigation expert at that time. So it completely wipes it, wipes it away, obviously much more efficient. But even if this court were not agree, any of the other issues, I still believe it would be more efficient in this case, and also more fair, especially in light of two matters. One is, of course, under Pennsylvania v. Finley, Ms. Macchia would not be entitled to the assistance of counsel in the 2255. And it's thus, ironic to say the least, to require a defendant in any situation, to try to vindicate her right to the assistance of counsel without having counsel during that process. But I would suggest... Can I ask you about, can I ask you about the guidelines, about the guidelines calculation? So first of all, is it the same, so under, when we evaluate it for procedural unreasonableness, or we evaluate it under strictliness, whether there's a reasonable probability that the outcome would be different, is that the same standard? Or is it possible for there to be procedural error, and yet the outcome would, is likely to be the same or vice versa? I'd say they're different tests, Your Honor. The, which is why both issues are raised in the brief. Under strickland, the prejudice prong obviously requires a reasonable probability that, you know, that undermining confidence in the outcome. The prejudice prong under, under the, well, there is no prejudice prong really under procedural unreasonableness. It's more sort of the question of whether it affects substantial rights. And the, the case law is pretty... Right, right. So when I'm talking about procedural unreasonableness, sometimes we've said that it might be procedurally improper if the district judge didn't start with the right guidelines calculation. But here, under strickland, if we're just trying to determine whether the outcome is likely to be different, and we have this the same sentence anyway, why doesn't that tell us that the outcome would be the same? Your Honor, because Dorvey and Fernandez are binding precedent, and they hold that that is insufficient. The government comes back with... But those are not, that's why I asked if the ineffective assistance is a different test. So those are not ineffective assistance as counsel, that's about procedural unreasonableness. So if it's just a prediction about whether the outcome would be different, why would we think the outcome would be different? I, well, I think, I think it, I don't think it's so different insofar that everything, even in the case cited by the government, Melina Martinez, goes on for pages about the fundamental importance of, of the guidelines analysis at the outset of the matter, because it informs every other consideration. In this case, the parties, neither Ms. Macchia or the government had any opportunity to respond to any of these concerns, which were only raised for the first time at some, we don't even know when they were raised, whenever the court filled out the Statement of Reasons form, after the fact, realizing the error. And moreover, the Statement of Reasons form itself is not publicly available. You would even have printed on it that it's not, you know, for, for public release. And as the court explained, I believe also it was in Dorvey, Dorvey covers a lot of ground in this case. Part of the reason why, why this is important is that the public themselves have a right to know what, why people are being sentenced. So your argument is that if at sentencing, the district judge had appropriately said that the level was 37 and the sentences, or the range is 210 to 262 months, but he nevertheless started talking about imposing a sentence of 360 months as an above guidelines sentence, he would have been able to make, or Ms. Macchia would have been able to make arguments about why it's not proper to depart from the guideline range. And that might have changed the outcome. Well, there would be, again, two things, Your Honor. First is that, yes, they would have the opportunity to, to discuss the issue of the variance in the case. And particularly, not only just discuss the issue, but, but I want to note that the only, the sole basis even provided in the statement of reason for, for this enormous variance is the fact that my client, you know, was with the mother of the young victim. And that already accounts for a six level increase to the guidelines range already. It's four levels under 2G2.1B1A. And it's to 108 to 135 months, which again becomes 180 because of the, of the mandatory minimum. But, but the factors that the court is relying on for this massive variance already are incorporated in essentially doubling the guidelines. I mean, like adding 10 years to the guidelines from 108 to 135 to 210 to 262. I mean, that's already massively incorporated here. And it, and it's more than reasonable, at least with, with a reasonably competent counsel, which is not necessarily the counsel in this case, that, that counsel would have sought to get, just to figure out why the court would- The statement of reasons reflects other reasons beyond her role as the mother, right? I mean, he says, he checks off remorse, lack of remorse. He talks about seriousness of the offense. He says, afford adequate deterrence to criminal conduct and to protect the public from further crimes. And he seems to also talk about, not just that she was the mother, but also that she made her daughter available to the other, to her co-defendant. I guess I would also ask. I would, I would say, Your Honor, that this is why the two ineffective assistance claims dovetail together and need to be considered together, because every one of those issues is precisely relevant for why a psychosocial report is necessary in this case to address those matters. As noted, again, as well as just physical abuse. She's, she suffered from so much anxiety and depression that she dropped out of- I get that. I just like to, I just like to focus on the, the guidelines in this calculation. So if, if the, instead of checking them off on the statement of reasons, the district judge were required to articulate those reasons at sentencing, how would the outcome in the case have been different? Well, again, I say, I go right back to door B, which is still binding precedent in this court, which all of it says that it is, it is per se, it is per se prejudicial. And the government's attempt to rely on Melina Martinez, in which the court imposed a within guidelines sentence, doesn't go to the point of door B, which is that we don't have a basis for knowing whether the variance is reasonable when the court fails to consider the correct guidelines range at the outset. And that's still binding precedent. And the government never discusses door B, even once, never mentioned that case anywhere. You've reserved two minutes for rebuttal. We'll hear from the government, then we'll hear back from you. Thank you. Good morning, Your Honors. May it please the court, Michael Guderian on behalf of the United States. I guess to try to address counsel's argument at the end with respect to door B, and its lack of from the government's perspective of, of application here, door B obviously predates Melina Martinez, that case from the Supreme Court, I don't think is limited in the fashion that defense counsel suggests. And in fact, it seems to talk about guideline errors, although in that case, resulting in a sentence within the correct, within the correct guidelines, even when they are outside. And I think case law after interpreting it is consistent with that, where there are errors of guideline calculation that result in an overstated guidelines, and therefore the sentence on being a variance and door B just doesn't talk about. But, but, but, but at most the case says, it's possible that there could be a guidelines error, and yet the outcome still would be the same, and it wouldn't be cause for, for reversal. But it doesn't say that you have to, right? So that just gets us back to the question of whether the outcome would be different, if he had realized his error at the time. I agree. I 100% agree with that, Your Honor. I think if that's the question, I think the combination of both the statement at the sentencing, where the judge talks about the possibility of a miscalculated guidelines and says, this is the sentence I intended to impose. And then in the statement of reasons reflects the outcome. But when he talks about the possibility of a miscalculated guidelines, he's talking about whether he made a mistake in coming to the number 40, right? You know, he's not, he, at that time, isn't conceiving of the fact that he misstated the, he misstated the, the guidelines level by, by three. I think that's the best reading of the record, Your Honor. I mean, I suppose it's possible that in his mind, a more significant error was, was possible given the back and forth over the guidelines. But I think, I think Your Honor's reading is probably correct. I would like though, to point out with respect to the procedural option for appellate courts that I don't think is appropriate here, but that I think the existence of reflects why the statement of reasons should really matter here. Melina Martinez talks about, I think positively, the possibility of a limited remand, the purpose of which is essentially to ask the district court, hey, in light of this error, is this the sentence that you intended to impose? Or now that you know that the guidelines were wrong, or in the case that they cite in Melina Martinez, that there was actually a lower mandatory minimum than the court recognized at the time, would you impose the same sentence or, or not? If, if that procedural tool may be appropriate in circumstances like this, I think it suggests here why the statement of reasons ought to be sufficient to avoid vacating the sentence and remanding for resentencing on this procedural error, because the district court does the things that presumably would have been asked of it, for purposes of a limited remand. And as Your Honor pointed out, when you went through the statement of reasons, it doesn't just say, because of the relationship between the abuser and the victim, I'm varying, it identifies other reasons, lack of acceptance of responsibility, notwithstanding giving the three level reduction, for example. But, but that said, you know, he expresses those views in checking off boxes on a form. And so the time that he was actually at sentencing and explaining his rationale in front of counsel, he did not even think he was imposing an above guideline sentence, and so never had occasion to explain any of that. And so, usually, we say that the judge needs to be on the record for giving an above guideline sentence. I mean, do we think that the form is a sufficient way to do that? Or shouldn't we say that we need to do that in front of counsel when he's elaborating the reasons for the sentence and considering the 355A factors? Yeah, there was procedural error here, Your Honor. The government, I'm sorry. I was correcting my citation, but go ahead. Okay, yes, the government concedes the existence of the procedural error at sentencing. And I think Your Honor's correct. The way that it should have happened was different. I think the case law suggests, though, that even when that's so, under plain error review, at least, if there had been an objection, we probably would have a different situation here, but there wasn't. But under plain error review, if you're looking at prejudice, then I think it's appropriate to look at the statement of reasons. And if the district court is saying to the appellate court, among others, in the statement of reasons, I understand now that the guidelines are 210 to 262 months and that it should have been a total offense level of 37 and not 40, and then says the reasons for the imposition of the nine-guideline sentence are fully noted on the record that this court ought to, unless there's some other reason not to. Well, he doesn't exactly say that, right? So if I look at the statement of reasons, he says the court inadvertently misstated the adjusted total offense level of 40. The court clearly said on the record that the above-noted enhancements were not being applied, which would result in an adjusted total offense level of 37, not 40, as noted on the record. So he seems to be saying that actually you should go back to the discussion he gave on the record and assume that he was really thinking of 37 all along and just misstated 40. But if he had been thinking of 37 all along, wouldn't he have directly said this is an above-guidelines sentence and given reasons for that? So isn't it more than just an inadvertent statement? I think that's right, Your Honor. I was reading from the portion of the statement of reasons at paragraph 8. The first line says the reasons for imposition of a non-guideline sentence are fully noted on the record. That was what I was referring to, Your Honor. Mr. Nardini, can I just ask a question about the appellate waiver? Yes, sir. So I see that you assert the appellate waiver in your brief. And I guess before I get to any further questions, I just want to know, is the government adhering to that position before us? Yes, sir. You are. And if we were to accept your argument that the appellate waiver is valid, you would therefore argue that we can't even reach the question of procedural unreasonableness, correct? Yes. But you would agree that we would still be able to reach the defendant's first claim of ineffective assistance to counsel, even though you think it loses the merits. And you would agree that counsel's performance was objectively deficient under the first prong of Strickland with respect to misstating the guidelines, right? Yes. But you would take the position that they're simply on the merits, then no showing of reasonable probability of a different outcome, right? That's correct, Your Honor. The government's not contesting the reasonableness of counsel's performance. The government's position is that the defendant can't show prejudice required by Strickland with respect to the first ineffective assistance of counsel claim. And then with respect to the second, as we argued, don't believe that a direct appeal is an appropriate time to resolve that ineffective assistance claim, given the sparsity of the record. I don't question counsel's representation with respect to his conversations. I just have no way to respond to that. So that is all correct, Your Honor. And with respect to the second prong of Strickland, the reasonable probability of a different outcome on the first point, which is counsel's pretty blatant, I mean, pretty amazing, this statement of the guidelines. And unfortunately, the government's failure to correct it either, right? I mean, the government at no point said, Judge, we're talking about what you found to be a range is actually 210 to 262, right? At no point the government pointed that out, right? Correct, Your Honor. So here we are left with a court that from the transcript appears by all of what appears in the transcript, which is all we have to work on, to be operating on the assumption that the applicable range was 210 to 262, right? Or I'm sorry, was it 290 whatever to 360, right? Correct. It was a higher range, Your Honor. Right. So that's what the judge was saying. 292 to 360 did not ever offer any reason to believe that the judge thought he was upwardly varying or departing, right? I think that's right. Yes. So you're strictly asking us to rely on the statement of reasons to correct all of those misstatements on the record under the second prong of Strickland on that, right? Well, I think what we argued in the brief, and perhaps the first part of this, the court may not find particularly compelling for the reasons that Your Honor already articulated, that the judge did recognize the possibility of a guidelines miscalculation. I don't know that the record supports that he recognized it to the extent that it's ultimately recognized in the statement of reasons. But those two things combined, and in light of the obligation of the defendant for purposes of ineffective assistance to counsel, showing prejudice in the face of the statement of reasons, that's correct. And again, I just would renote the idea that I think is approved in Molina-Martinez of a limited remand, which would have asked essentially the same question that the district court answered in the statement of reasons. And that's a Jacobson remand, right? That's a limited remand. Yes, Your Honor. I mean, what we in the Second Circuit call a Jacobson remand. You're saying it's effectively that the court preempted us and did it for us in advance by filling out the statement of reasons the way it did? I think that's right. And also, if I just briefly, the defense, and I understand the argument, says, well, this is just a post hoc justification on the part of the district court. But that is what would have happened were this court to do something like a limited remand in other cases where you essentially ask the judge the question, now that you're aware of this mistake, would you have done the same thing? I mean, that's post hoc as well. I don't know that the fact that it is post hoc by itself, unless there's some other reason to question the, you know, the sort of bona fides of it or why the district court said what it said, that that wouldn't be enough. Mr. Guderian, this is just to follow up on that. Was there, is there a meaningful opportunity for defense counsel to, after the statement of reasons or whenever the district court announced that, or on the record announced that it understood that it had made an error, was there a meaningful opportunity to object at any point? Your Honor, I'm not sure that the record really answers that question. So I don't want to speculate about what specific opportunity might have been afforded when the judgment was entered. I mean, whatever available tools there are to file an objection or file a request for resentencing were available. I don't know that there was a specific query by the district court essentially inviting responses to that. Can I ask a question about the post hoc thing? So since we've said, or the Supreme Court has said that the guidelines is the starting point and the initial benchmark for sentencing, don't we usually think about it in terms of framing things from the beginning? And so when we apply the Strickland test, the idea that whether it would be different, shouldn't we think about it as if he had recognized the error from the beginning, even if the most we could do is remand it for a post hoc consideration? Is that really the proper mode of analysis for deciding whether the outcome would have been different if the error hadn't happened? Your Honor, I think it almost has to be if it's an outcome-based prejudice test rather than a process-based prejudice test. I mean, clearly this court could, if it remanded for resentencing, hopefully cure the procedural errors, right? I mean, so the district court would be advised that you made these mistakes, you should address these points, even though we know you told us that the ultimate outcome would be different. I mean, that may be an unsatisfactory answer, but I do think that the way that it's set up, if the district court says this is the sentence I intended to impose, that the defendant hasn't shown prejudice, even though, and as the government conceded here, there was ineffective assistance in terms of the deficient performance and procedural error. Ironically... If I could ask about the, sorry, there's one last, if we could ask about the, just a quick question on the appeal waiver. So you say that she got a benefit from the government's decision not to bring other charges, but that's not reflected in the agreement. I mean, isn't that always possible? Wouldn't that mean that essentially every appeal waiver would be supported by adequate consideration or we would never really have a case? Go ahead. Sorry, I think it is reflected in the agreement because the way that the government describes it and that the defendant agrees to, it says the government's not going to bring additional charges based on the facts described in the factual basis section of this plea agreement. And so that is what's reflected there. It's certainly true, and I don't know that this has been required by this court, I don't think so, that the government could list charges there. There are reasons why it's not done that way because, among other things, it's actually more favorable to the defendant to have a factual barrier to additional charges rather than just those specific additional charges that are enumerated under the circumstances. So I think, at least as drafted here, when it says the government's not going to bring additional charges based on the factual basis of this plea agreement, that it is articulated to the defendant with sufficient specificity, at least for purposes of meeting consideration. Thank you. And this is Biston Ardini. Can I just, I think, just clarify that point? Yes, sir. And this was a plea to win information, is that right? Yes, sir. And is it typical, my understanding, that when a defendant pleads to win information, there's not the situation where the government is dropping, you know, formally bringing and then dropping additional charges, right? That's correct. At least the practice in my district I can represent to the court. Right. Okay. And your argument is that because on the face of your plea agreement, you had a recitation of the factual conduct and you had a satisfaction of criminal liability clause in your plea agreement, you're saying that the consideration was effectively recited on the face of the plea agreement? Yes, sir. Okay. Thank you. Thank you. Thank you. If there are no further questions, the government rests. Thank you, Your Honors. Mr. Newdorf. Thank you, Your Honors. I know I don't have much time, but I'd like to try to get through three points as quickly as possible. The first, just overarching, is the burden of proof under Strickland, because we've spoken a lot about the outcome of the proceeding being different. But the very following line in Strickland is what establishes the relatively minimal burden of proof in suggesting the reasonable probability is a probability sufficient to undermine confidence in the outcome. The burden is not to prove that the outcome would totally have been different. The outcome, it's sort of like the beyond a reasonable doubt type of situation in reverse. Unless the court has the utmost confidence, I would suggest that the outcome would have been the same. No matter what, there is a reasonable probability. Mr. Newdorf, if you were to remand and the district court sentencing judge said exactly what he said in the statement of reasons and so on, would our level of confidence change? I think not. Well, I think the one thing we've asked for remand to a different sentencing judge, and we haven't really spoken in this argument about the substantive reasonableness issues. But I believe that there are very strong substantive reasonableness considerations here that undermine the fairness of the proceeding that Ms. Macchia received. But at the very least, I'm sorry, there would be the opportunity for there to be argument about the fact of the variance, including the fact, which again is not necessarily apparent, that the district court realized that the primary factors relating to this huge upward variance were already incorporated in increasing the guidelines range by approximately 10 years. In the sixth level enhancement, they're already factored in. So you think the district judge might not say the same thing he said in the statement of reasons if there were a remand for a new sentencing? I'm saying that if we assume that the effectiveness of counsel means anything in a case, and obviously we do because there's a constitutional right to it, then we assume that the ability of counsel to make arguments about a fundamental issue here, whether or not a variance should apply, has some possibility of affecting the outcome. Otherwise, there's no point of having counsel present at the sentencing hearing at all. So counsel, this is Judge Gennardini. Tell me if I'm characterizing your arguments correctly, that it may be one argument to say, you know, the district court misstated the guidelines, and then later caught its mistake and said I'd do the same thing anyway. But you're also saying that you have a similar but maybe stronger argument saying the district court may have caught its own error, but at no point did the district court say that it now realizes that the defense lawyer also made an error and that the defense lawyer failed to engage in appropriate advocacy, which would have, for example, included fighting tooth and nail against an upward variance. So we may have the district court saying that I meant to impose a 360-month sentence regarding the guidelines calculation, but at no point did the district court say, oh, and by the way, had defense been better and maybe argued other things to me about not upwardly varying, I still would have imposed a 360. Are those – is that – am I capturing things accurately or not? Yeah, I think the second especially captures it, but I think it even goes further than that. Not only it's the court, it's defense counsel, it's even the prosecution. Every party in the – it's even probation officer here. Everyone has this wrong, and if that doesn't undermine confidence in the outcome, then it's hard to see why we have these proceedings at all. The government in the sentencing memorandum said that it believed that within guidelines range was appropriate. But they were thinking about a range that was off the charts, right? Well, yeah, exactly. They weren't saying whatever the guidelines range may be, even if it's zero to six, we're cool with that, right? They were presupposing that she got all the – I'm sorry. I'm sorry. Let me just finish this thought. They were presupposing that she got all the enhancements that the court dropped out, right, when they said that. Well, yes and no, because even with the 40, the incorrectly done 40, the 360-month statutory maximum is still within a guideline sentence. And again, that's part of the point about the court not even realizing that the sentence imposed constituted a variance. You know, from the guidelines, you know, at sentencing. So even after the court did not apply or purported not to apply the four-level and five-level enhancements, you know, at that point, the government and the court all still believed that this was within guidelines sentence, you know, as obviously did, you know, the ineffective attorney. I mean, again, if these hearings are to have any realistic meaning, if we're going to assume that the government and defense counsel and the parties are going to weigh in and make their arguments, that the court is going to consider these arguments, I mean, just quoting Melina Martino. Mr. Nutter, is there a similar case on point with a similar set of facts on this issue? So I think you're making this argument that you have a conceitedly ineffective counsel whose performance was deficient in connection with sentencing. And then without any conversation, discussion, argument, a district court, sui sponte, realizing its error and putting it on for our purpose, for our benefit, putting it on the record that he would impose the same sentence. But as you point out, there's no shadowboxing a little bit and there's no, I think, subsequent ability to object or to interject on the part of ineffective counsel. Is there a case on point or very similar case? I don't think I think, Your Honor, that, frankly speaking, the events of this sentencing, as I started this argument, are so beyond the pale that I think I'm not aware of any case that has, as it were, screwed up the sentencing procedure by every party as much as as this one was screwed up, which is good. I mean, it would be bad if we had a lot of cases in which case there may not be a case, but in terms of the reported case, you're not aware of anything like this. I'm not, Your Honor, but I think that also that just for the for the point of the appeal waiver provision, there was a second point. In addition to the consideration one, which is whether the as an equitable and fairness matter, the government should be able to enforce an appeal waiver where it actively contributes to the issue, you know, in this case, the incorrect guidelines calculation. And the government is a matter of contract. I mean, isn't the appeal waiver presuppose that you're waiving an error? So when error later occurs, that is what you're bargaining away, right? I mean, you don't bargain away an appeal waiver only if there are no mistakes made. And I don't think that there's an exception that if the mistake is somehow the government's involved. Well, I completely disagree, Your Honor. Mutual mistake is absolutely a basis for invalidating a contract under under any. That's an advance, right? That's mutual mistake about the premise, right? But you're talking about something that happens afterwards. There was no mistake in advance. Was there about what the appeal waiver meant or what the parties were stipulating the range ought to be? I mean, your client stipulated that she was going to be sky high in terms of the range. And it turns out the judge basically thought he was giving her a break and knocking a bunch of enhancements off. Well, to respond to that, Your Honor, first of all, while while it's absolutely true that the contract principles do guide the analysis, they're not the end of the analysis as well, because as this court's jurisprudence has shown, the scale still is tipped in important ways in the construing of these contract terms in favor of the defendant. And that's particularly in the case of Reddy, which talks about why the court maintains the power for general fairness principles to invalidate any term of the contract, which ordinarily isn't something, you're right, that would apply in the usual contract setting. But this does apply when we're talking about appeal waiver provisions. So what I'm asking for is a specific application of what the court said more generally in the Lutchman case and in the Reddy case, which is that fundamental general fairness principles need to guide the analysis. Thank you very much. The case is submitted. We'll reserve decision.